IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 21, 2024

## STATE OF TENNESSEE v. LAVONDAS C. NELSON

**Appeal from the Circuit Court for Rutherford County**
**No. 84815A  Barry R. Tidwell, Judge**

_____

### No. M2023-00176-CCA-R3-CD

_____

A Rutherford County jury found Defendant, Lavondas C. Nelson, guilty of two counts of sale of more than 0.5 grams of cocaine within 1,000 feet of a school (Counts 1 and 2), and sale of more than 0.5 grams of cocaine (Count 3).  The trial court sentenced him to forty years in the Tennessee Department of Correction (TDOC).  On appeal, Defendant argues the evidence was insufficient to establish that he sold cocaine within a school zone, the trial court erred in failing to instruct the jury on entrapment, and his sentence is excessive.  After review, we affirm the judgments of the trial court.  However, we remand the case to the trial court for entry of revised judgments in Counts 1 and 2 that reflect the proper release eligibility for those offenses.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed as Modified; Case Remanded**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TOM GREENHOLTZ, JJ., joined.

Jesse Emerson (on appeal), Michael Auffinger (at motion for new trial hearing), Anthony J. Cain (at sentencing), and Taylor Payne (at trial), Murfreesboro, Tennessee, for the appellant, Lavondas C. Nelson.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Jennings Jones, District Attorney General; and Eric Farmer and Andrew Hazley, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## I. Trial

This case arises from three transactions in July and August 2019 in which Defendant sold crack cocaine to a confidential informant (CI). Defendant was initially charged with five counts of sale of 0.5 grams or more of cocaine within 1,000 feet of a school, but before trial two of the counts (alleging drug sales on dates outside the time frame listed above) were severed.[1] The parties agreed to strike the school zone sentencing enhancement in Count 3, which related to Defendant's sale of cocaine on August 28, 2019. The case proceeded to trial on April 5-6, 2021, and the proof at trial established the following facts.

On July 31, 2019, Murfreesboro Police Department Detective Greg Flanagan used a CI, Darrell Smith, to purchase $120 of crack cocaine from Defendant outside J.D.'s Market in Murfreesboro. Before the controlled purchase, the detective provided the CI with previously identified money (the detective recorded the serial numbers of the bills used in the purchase) and an audio/video recording device. A video of the purchase was introduced into evidence at trial. After the controlled purchase, Detective Flanagan retrieved the suspected narcotics from the CI and sent the contraband to the Tennessee Bureau of Investigation (TBI) Crime Laboratory for testing. TBI Special Agent Rebecca Hernandez tested the rock-like substance and confirmed that the substance from the first transaction contained 1.7 grams of cocaine.

Detective Flanagan again used the CI to purchase crack cocaine from Defendant on August 12, 2019. As with the first controlled purchase, the detective gave the CI previously identified funds and an audio/video recording device before making the second controlled purchase. Video of this controlled purchase was introduced into evidence at trial. In the second controlled purchase, the CI met Defendant outside a residence on East Castle Street in Murfreesboro. After the CI purchased the suspected narcotics from Defendant, Detective Flanagan took the contraband from the CI and forwarded it to TBI; Agent Hernandez's testing of the rock-like substance confirmed it contained 0.77 grams of cocaine.

On August 28, 2019, Detective Flanagan directed the CI to purchase more crack cocaine from Defendant. After the detective gave the CI $130 in previously identified funds and an audio/video recording device, the CI met Defendant outside a residence in Murfreesboro, where the CI again purchased suspected narcotics from Defendant. After

---

[1] After severance of two of the charges, the remaining charges were submitted to the jury as: sale of more than 0.5 grams of cocaine within 1,000 feet of a school (Counts 1 and 2), and sale of more than 0.5 grams of cocaine (Count 3). For clarity, we will use the renumbered counts as they were submitted to the jury.

the purchase, the CI gave Detective Flanagan the contraband, and after the detective forwarded the contraband to TBI, Agent Hernandez's testing of the rock-like substance confirmed the substance contained 0.79 grams of cocaine. Video from the third controlled purchase was also introduced into evidence. Detective Flanagan testified that Defendant drove the same BMW during all three transactions and wore the same hat in the last two videos. In his trial testimony, the CI identified Defendant as the person from whom he purchased narcotics on all three occasions. The CI also said that Defendant set up the locations where each of the three purchases took place and denied that the CI or detective did so.

Detective Flanagan testified regarding the development of confidential informants:

We have covert means to start investigations of that nature. Sometimes we get confidential informants that just call in and say they have some information. And while we are debriefing these guys on the telephone, we might say, hey, do you have anybody that you can purchase from. Or the person that you are calling in about, have you ever purchased. And see if they are interested in basically becoming an informant for the police department.

Other ways that we obtain informants is through our Patrol Division. If they stop somebody and they have a small amount of narcotics on them, they can give that person a phone number. Sometimes it's my phone number. And that person can call me. I can meet with them and discuss their situation. And they may decide to start purchasing narcotics for me.

Detective Flanagan acknowledged that "the majority" of persons who worked as CI's were persons who had been arrested for drug offenses or otherwise facing drug charges. The detective stated that CI's could work for the police for various periods of time depending on "what they can do and how many transactions they can do."

The detective testified that he had "the authority to meet with the District Attorney's Office to see if they can get some assistance with their charges," and he also acknowledged that CI's could be paid. Detective Flanagan stated that CI's made "anywhere from $120 to $180 a buy." The detective admitted that the CI in this case received a $3,500 "severance" or "relocation" payment once he told the police that he no longer wanted to serve as a CI.

Michael Curtis, the Geographic Information Systems (GIS) Manager for Rutherford County, testified that his work duties include maintaining a geodatabase for all maps maintained by the Rutherford County Property Assessor; this data is in turn used for

electronic mapping purposes. Mr. Curtis testified that his review of the mapping data indicated that the location of the July 31, 2019 controlled sale was within 1,000 feet of Rutherford County Head Start, an early childhood program of the Rutherford County School System. Specifically, Mr. Curtis testified that the first sale location was "roughly 150 feet, give or take" from the Head Start location. Mr. Curtis testified that the location of the August 12, 2019 controlled sale was within 1,000 feet of Holloway High School, a Rutherford County public school. Specifically, Mr. Curtis testified the second sale location was between "775 and 800 feet" from Holloway High.

Mr. Smith, the CI, testified that he had several prior criminal convictions, including a 1996 felony conviction for cocaine possession, a 2010 felony conviction for marijuana possession, and 2016 convictions for fraudulent use of a credit card and theft under $500. In 2019, Mr. Smith was arrested for misdemeanor cocaine possession; he acknowledged that after his arrest, he was "given the opportunity to speak to a detective regarding the case[.]" Mr. Smith contacted the detective and agreed to become a CI in return for the dismissal of the misdemeanor charge. He said that at the time, his mother was ill and he was homeless; Mr. Smith "needed the money" and was willing to do "whatever [he] had to do to survive." Mr. Smith acknowledged serving as a CI between ten and twenty times. When asked why Mr. Smith identified Defendant as a purchase target, Mr. Smith testified that he knew Defendant "was somebody I could get [cocaine] from." When asked whether Defendant trusted him, Mr. Smith replied, "He trusted me enough to sell it to me." Mr. Smith acknowledged Defendant would not have been facing the present charges had he not purchased drugs from Defendant while serving as a CI.

In addition to having his charges dismissed, Mr. Smith acknowledged he was paid for his work as a CI, usually $160 to $180 per transaction. He also acknowledged receiving a $3,500 "severance" payment from the Murfreesboro Police Department after ending his work as a CI. After ending his work as a CI, he took care of his mother, obtained custody of his niece, and obtained stable housing and employment.

Defendant did not testify or present evidence on his behalf.

After its deliberations, the jury found Defendant guilty of two counts of sale of 0.5 grams or more of cocaine within 1,000 feet of a school (Counts 1 and 2) and one count of sale of 0.5 grams or more of cocaine (Count 3).

## II. Sentencing Hearing

The presentence report introduced as an exhibit at the sentencing hearing showed Defendant had a lengthy history of criminal convictions—the trial court counted ninety-two convictions—dating to 1991, when Defendant was eighteen years old. Most of the

convictions were for misdemeanor offenses, including twenty-one public intoxication convictions and thirteen convictions for driving on a suspended license, but Defendant also had six prior felony convictions. He was convicted in 2000 for reckless endangerment with a deadly weapon and felon in possession of a weapon (both from the same criminal episode), in 1996 for possession of cocaine with intent to sell, in 1996 for reckless endangerment with a deadly weapon and felon in possession of a weapon (both for the same incident), and in 1994 for cocaine possession with intent to sell or deliver. The presentence report indicated Defendant had worked as a framer for a carpentry company between 2008 and the time of his arrest, but Defendant testified that he lost his job several months earlier, in February 2019.

Detective Flanagan testified that during a telephone call recorded while Defendant was held at the Rutherford County Jail following trial, Defendant threatened to "smoke" the CI once Defendant was released from custody. The detective acknowledged such talk "may not be uncommon" from a defendant convicted following the testimony of a person Defendant trusted, but the detective added, "I also think that things can be interpreted to where things could be taken as serious [in] nature, as well."

Patience Sneed, Defendant's fiancée, testified on his behalf. She formerly worked with the Rutherford County Recovery Court and had a history of various peer support work for inmates. She described Defendant as an "intelligent, God-fearing, misguided black man" who would benefit from a "rigorous re-entry program" to include drug and alcohol counseling and mental health counseling.

Defendant testified that he grew up in a "chaotic" house with an alcoholic mother who also used crack cocaine. He first used crack cocaine at age fifteen and began selling drugs at age fifteen or sixteen. He resumed selling drugs after losing his most recent job in February 2019 to support himself and his then-girlfriend. Defendant said he had no idea he sold drugs to the CI in a drug free school zone, even though he selected the location for the sales to the CI. Defendant testified that he was placing himself at "the mercy" of the trial court. He recognized that he had unsuccessful probationary and rehabilitative stints in the past, but he was nonetheless asking for an opportunity to avoid a lengthy prison sentence.

At the end of the sentencing hearing, the State argued that the trial court should sentence Defendant as a Range II, multiple offender, considering his six prior felony convictions. The State asserted that the trial court should enhance Defendant's individual sentences based on the enhancement factor set forth in Tennessee Code Annotated section 40-35-114(1): "The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." The State also

argued consecutive sentences were appropriate based on Code section 40-35-115(b)(2), "The defendant is an offender whose record of criminal activity is extensive."

Defendant contended that because the record did not contain notice that the State intended to seek a Range II sentence, he should be sentenced as a Range I, standard offender.[2] Defendant argued that the several mitigating factors applied to his sentence:

> (1) The defendant's criminal conduct neither caused nor threatened serious bodily injury;
> (2) The defendant acted under strong provocation;
> (3) Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
>     . . . .
> (7) The defendant was motivated by a desire to provide necessities for the defendant's family or the defendant's self; [and]
>     . . . .
> (13) Any other factor consistent with the purposes of this chapter.

Tenn. Code Ann. § 40-35-113(1)-(3), (7), (13). Defendant also argued against consecutive sentencing and contended that he was a favorable candidate for probation.

At the end of the sentencing hearing, the trial court found that although Defendant's prior felony convictions would qualify him to be sentenced as a Range II offender, the State had not filed the notice of enhanced punishment required by Tennessee Code Annotated section 40-35-202(a), so the court would be sentencing Defendant as a Range I, standard offender. The court found the State's proposed "criminal history" statutory enhancement factor applicable to Defendant's individual sentences. The court announced that it had considered Defendant's proposed mitigating factors but found none applied. The court, therefore, imposed sentences of ten years for Defendant's convictions on Counts 1 (sale of cocaine within 1,000 feet of the Murfreesboro Head Start) and 3 (sale of cocaine that did not occur in a school zone). The court imposed a twenty-year sentence for the conviction on Count 2 (sale of cocaine within 1,000 feet of Holloway High School).[3] Additionally, the trial court imposed the three sentences consecutively to each other based on Code section 40-35-114(1) and denied Defendant's request for probation. Accordingly, Defendant's total effective sentence was forty years in TDOC. This appeal followed.

---

[2] "If the district attorney general believes that a defendant should be sentenced as a multiple, persistent[,] or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial[.]" Tenn. Code Ann. § 40-35-202(a).

[3] We will explain the trial court's sentencing relative to the Drug-Free Zone Act below.

## III. Analysis

### A. Sufficiency of the Evidence

Defendant argues the evidence produced at trial was insufficient for the jury to find him guilty of the sale of cocaine within 1,000 feet of a school beyond a reasonable doubt. Defendant does not challenge the jury's finding that he sold the CI cocaine or that the substance in the three transactions contained cocaine. Rather, Defendant contends that the evidence was insufficient to establish that the two facilities were schools at the time of the transactions. We disagree.

### 1. Standard of Review

The standard of review for a claim challenging the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). This standard of review is identical whether the conviction relies on direct evidence, circumstantial evidence, or a combination of both. *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018) (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)).

A guilty verdict removes the presumption of innocence and replaces it with one of guilt on appeal, therefore, the burden is shifted to the defendant to prove why the evidence is insufficient to support the conviction. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)). On appeal, "we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *Id.* at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual disputes raised by such evidence, are resolved by the jury as the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 405, 410 (Tenn. 1990). Consequently, we are precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017).

### 2. Sale of Cocaine

It is an offense to knowingly sell a controlled substance. *See* Tenn. Code Ann. § 39-17-417(a)(3). Cocaine is a Schedule II controlled substance. *Id.* § 39-17-408(b)(4). A

person acts knowingly "with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id.* § 39-11-302(b). "[A] sale consists of two components: a bargained-for offer and acceptance, and an actual or constructive transfer or delivery of the subject matter property." *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002) (citing *State v. Wilkerson*, No. 03C01-9708-CR-00336, 1998 WL 379980, at *3 (Tenn. Crim. App. July 8, 1998)). "One who accepts payment in exchange for property is involved in a sale." *Id.* at 510-11 (citing *Wilkerson*, 1998 WL 379980, at *3). When the amount of cocaine sold is 0.5 grams or more, the offense is a Class B felony. Tenn. Code Ann. § 39-17-417(c)(1).

As stated above, Defendant does not challenge the jury's findings that Defendant sold the CI 0.5 grams or more of cocaine on three separate occasions. Indeed, the evidence here, in the light most favorable to the State, supports the jury's verdicts on those elements. The three transactions in which Defendant sold the CI crack cocaine were audio and video recorded, and recordings and photographs of these transactions were introduced at trial. Both the detective who authorized the transactions and the CI testified regarding each transaction, with the CI identifying Defendant as the person who sold him crack cocaine in each instance. Testing at the TBI crime lab confirmed the substance Defendant sold to the CI in all three transactions was cocaine in the amounts of 1.7 grams, 0.77 grams, and 0.79 grams.

### 3. Sale of Cocaine Within School Zone

The only issue to be resolved relative to the sufficiency of the evidence is whether the State proved beyond a reasonable doubt that Counts 1 and 2 occurred within a drug-free zone. At the time of these offenses, Tennessee Code Annotated section 39-17-432(b)(1) provided, in relevant part:

> A violation of § 39-17-417 . . . that occurs on the grounds or facilities of any school or within one thousand feet (1000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in 39-17-417(b)-(i) for such violation.

Tenn. Code Ann. § 39-17-432(b)(1) (amended Sept. 1, 2020; further amended Apr. 29, 2022). However, as relevant to this case, if the person was convicted of selling drugs within 1,000 feet of a prohibited place other than a child care facility or a K-12 school, the person would "not be subject to additional incarceration as a result of this subsection (b) but may be subject to the additional fines imposed by this section." *Id.* § (b)(3). The sale of drugs within a drug free zone is not a separate offense or essential element of the underlying drug

offense; rather, the sale of drugs within a school zone merely enhances the penalty for violations of Tennessee Code Annotated section 39-17-417 that take place within the school zone. *See State v. Smith*, 48 S.W.3d 159, 168 (Tenn. Crim. App. 2000).

In this case, Defendant does not dispute the testimony of Mr. Curtis, the Rutherford County GIS manager, that the site of Defendant's first drug sale was 175 feet from the Head Start facility and the site of the second drug sale was 750 to 800 feet from Holloway High School. Rather, Defendant contends "the State did not present evidence of the purported schools' locations on the date of the alleged offenses, nor testimony that the map" used as part of the State's case-in-chief "was substantially similar to that of the offense date, nor testimony that the schools were in existence on the dates of the offenses[.]" Defendant also faults the State for "not provid[ing] any statements about [Holloway High]'s hours or whether it was active or in session" and for not establishing whether the Head Start facility was a "preschool" within the meaning of the Drug-Free Zone Act.

(a) Head Start as "Preschool"

Regarding the Head Start facility, Defendant points to this court's opinion in *State v. Moore*, No. M2020-00704-CCA-R3-CD, 2021 WL 4144056, at *1 (Tenn. Crim. App. Sept. 13, 2021), in which this court struck the school zone enhancement factor which the jury found had applied because Moore's drug offenses "occurred within 1,000 feet of a childcare center or a child care agency." At trial, a detective testified that controlled drug buys for which Moore was convicted "took place within 1,000 feet of Little Shepherd's Child Care (Little Shepherd)[.]" *Id.* at *3. The detective testified he gleaned the location of Little Shepherd from a "Tennessee online database 'where you can put a specific address in and it will tell if it's in violation of a school zone[.]'" *Id.* (alteration in original). The online database generated two names at the same address: Little Shepherd and another facility that the detective insisted was "'no longer there' at the time of the controlled buys." *Id.* The detective explained both facilities "'would be day cares in essence' and 'child care agencies.'" *Id.*

In *Moore*, we noted that the State did not present the testimony of anyone employed by Little Shepherd to explain "the type of services provided, the number of children for whom care was provided, or the hours of operation." *Id.* at *8. We distinguished *State v. Bryant*, No. M2009-01718-CCA-R3-CD, 2010 WL 4324287, at *13 (Tenn. Crim. App. Nov. 1, 2010), where we had concluded juries could use common sense to determine whether buildings identifying as elementary schools were in fact schools. *Id.* We reasoned that the name "Little Shepherd['s] Child Care" did not, in and of itself, prove the business was a childcare agency or center, and concluded that "child care agency and childcare center are terms of art." As such, we distinguished *Bryant* on that basis, and concluded,

"The State failed to prove that Little Shepherd was a child care agency or a childcare center and, therefore, failed to prove that the controlled buys occurred within 1,000 feet of the real property that comprises a child care agency or a childcare center." *Id*. Accordingly, based on the State's failure to prove that factor, we vacated Moore's enhanced sentence under the Drug-Free Zone Act.

In this case, two witnesses testified about the Murfreesboro Head Start Program. Mr. Curtis testified that from his "understanding of what [he] looked up," Head Start is "a preschool to help kids get better education and start them ahead in areas where that area may be some problems with getting kids started early enough in education." In his direct examination testimony, Detective Flanagan was asked whether Head Start was "a public preschool," to which he answered, "it's my understanding that it's a partner with the Murfreesboro school system." On cross-examination, the detective acknowledged not knowing any details about the "arrangement" of any partnership and did not know whether the Head Start was privately owned.

This case is more like *Bryant* than *Moore*. In *Bryant*, a Metro Nashville Planning Department employee created a map using official Metro Nashville property data and aerial photographs taken "less than a year after the offenses took place" and, after mapping two offense locations, testified that each of the offenses occurred within 1,000 feet of a named Metro Nashville public school. *Id.* at *13. We concluded the evidence was sufficient to establish the named locations were schools based on witness testimony, coupled with the jury's ability "to use common sense in evaluating the information and [the witness's] testimony" to determine what constituted a school." *Id.* Similarly, in this case, Detective Flanagan and Mr. Curtis, the Rutherford County GIS manager, coupled with the mapping data presented through Mr. Curtis's testimony, shows the Murfreesboro Head Start was operating as a preschool at the location identified by the State on the offense date. Even though the State could have called a witness from Rutherford County Schools or the Head Start program to testify regarding the services provided by the program, including its educational component, this was not required. *See id.* at *12. We also acknowledge that forty years ago, the Tennessee Supreme Court concluded that a county department of education's use of a former school building as a Head Start program constituted use for "educational purposes" within the meaning of a land conveyance's restrictive covenant. In *McDonald v. Smith Cnty. Bd. of Educ.*, 675 S.W.2d 704, 706 (Tenn. 1984), the Court described Head Start as follows:

Head Start is a pre-kindergarten program for 3 to 5[-]year[-]olds with an extensive educational element as required by Federal regulation. The scheme provides that each Head Start agency develop and administer a Head Start program aimed at providing "comprehensive, health, nutritional educational, social, and other services" to disadvantaged pre-school children. 42 U.S.C.

- 10 -

§ 2928 (1976) [(superseded)]. Head Start programs are free for poverty level children, all handicapped children, and other children on a sliding scale basis. 42 U.S.C. § 2809 (1976) [(superseded)].

(parenthetical added). The Head Start program has been around for a long time, and people know what it is. The jury, through its verdict, also knew what it was. Further, nothing in the Drug-Free Zone Act requires the school to be a public, as opposed to a private school. We conclude the testimony of the two witnesses, along with the jury's ability to use its common sense, was sufficient to identify the Head Start Program as a "preschool" for purposes of the Drug-Free Zone Act.

Ultimately, though, even if the evidence was insufficient to find that Head Start was a "preschool" within the meaning of the statute, Defendant was not prejudiced by the jury's verdict on Count 1 finding the enhancement. Under Rule 36(b) of the Tennessee Rules of Appellate Procedure, "A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." As explained above, a person convicted of violating the Drug-Free Zone Act, for an offense committed within 1,000 feet of a preschool, is not subject to a lengthier sentence; rather, such a person faces only an enhanced fine. In this case, Defendant was fined $2,000, well below the maximum fines for criminal offenses not enhanced by the Act. *See* Tenn. Code Ann. §§ 40-35-111(b)(1) and (2) (maximum fine for Class A felony $50,000 and Class B felony $25,000), 39-17-432(b)(2)(D) and (E) (enhanced Drug-Free Zone Act fine maximums of $100,000 for Class A felony and $60,000 for Class B felony). Consequently, if there were error on this issue, it was harmless.

(b) Defendant's Other Contentions

Defendant also argues the State failed to establish that the Head Start facility and Holloway High School were in session at the time of the offenses. However, "this court has already held that a school does not have to be in session in order for a defendant to violate the act." *State v. Peters*, No. E2012-02135-CCA-R3-CD, 2014 WL 50795, at *8 (Tenn. Crim. App. Jan. 7, 2014) (citing *State v. Reed*, No. E2010-01138-CCA-R3-CD, 2011 WL 2766766, at *15 (Tenn. Crim. App. July 18, 2011)). Regardless, we note that in *Bryant*, cited above, this court rejected an appellant's contention that "the State's proof was insufficient because it did not demonstrate that [the identified school] buildings actually functioned as schools or were in existence at the time of the offenses." 2010 WL 4324287, at *11. While observing that "this court has affirmed school-zone convictions where the proof included testimony from an employee of the school about its operation," we also recognized that "our courts have never held that doing so was required." *Id.* at *12.

- 11 -

Similarly, in this case, the testimony of Detective Flanagan and Mr. Curtis, coupled with the mapping data presented through Mr. Curtis's testimony, was sufficient for the jury to use its common sense and conclude that the Murfreesboro Head Start and Holloway High were a preschool and secondary school, respectively, and were operating at the locations identified by the State on the offense dates.

In sum, the evidence was sufficient to establish, beyond a reasonable doubt, that Defendant's convictions on Counts 1 and 2 occurred within 1,000 feet of a school. Defendant is not entitled to relief on this issue.

## B. Entrapment Instruction

Defendant contends the trial court erred in failing to instruct the jury on the defense of entrapment. The State responds that the evidence did not support such an instruction. We agree with the State.

## 1. Arguments and Ruling at Trial

The record on appeal contains no pretrial notice of Defendant's intent to raise an entrapment defense, even though such notice is required by statute. *See* Tenn. Code Ann. § 39-11-505. The first reference in the record to a potential entrapment defense occurs in the transcript from the morning of the second day of trial, at which point the trial court acknowledged receiving defense counsel's request for jury instructions but stated that "entrapment is not in [the proposed jury charge] yet. But don't read anything [into] that. I will rule on that after the State's proof." After the State rested its case in chief, Defendant argued:

> Entrapment can be raised on cross[-]examination. And, essentially, there [are] two elements. One, that but for a State actor acting on the [d]efendant, the crime would not have been committed.

> And there's also an order to prove entrapment, you have to find that [Defendant] was predisposed to commit the crime. I don't think there's really been any evidence [of] predisposition. And it's largely uncontroverted that Mr. Smith, the confidential informant, specifically sought out [Defendant] while he was working as a confidential informant for the purposes of fulfilling his duty as a confidential informant.

> So, I think that we have met the burden to have that instruction raised. I think it's been fairly raised.

- 12 -

The State responded:

> Your Honor, I recall [defense counsel]'s question when he asked the confidential informant is the only reason we are here today is because you as a State actor bought drugs from my client. He said yes.
>
> I thought that was close to raising the defense of entrapment. But I didn't think that it was fairly raised, [h]owever, if the Defense wants to contend that it's fairly raised and they want to request that jury instruction, I will be happy to put on rebuttal evidence to show that . . . Defendant did have a predisposition to sell narcotics.

In denying Defendant's request for an entrapment instruction, the trial court stated:

> I think the testimony of Mr. Smith was that he both worked off charges as well as was a paid informant for a while for more than one individual. I think he worked -- the testimony was a total of [ten] to [twenty] times.
>
> And the question was why [Defendant][?] And his answer was because he knew him. And knew that he could get it from him.
>
> The videos we watched, my assessment of them was certainly a collegial relationship. I think maybe Mr. Smith said that they were associates or had known each other in some manner.
>
> But there is no question that the arrangement was with Mr. Smith calling [Defendant] and basically setting up a buy.
>
> . . . .
>
> Under the statute -- and then I will get to those cases. The defense of entrapment is available when, one, law enforcement officials acting either directly or through an agent induced or persuaded a person to commit an unlawful act; and then two, such person was otherwise unwilling or had no predisposition to commit the unlawful act.
>
> In the case at hand, considering factor one, inducement is what is required. And our Supreme Court has held that inducement by law enforcement officials take many forms, including persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas, based on need, sympathy, or friendship. Solicitation requests or

approach by law enforcement officers to engage in criminal activity standing alone is not an inducement.

Law enforcement officials are not precluded from utilizing artifice, stealth, stratagems such as decoys, undercover agents, in order to apprehend persons engaged in criminal activities provided that they merely afford opportunities or facilities for the commission of the offense by one predisposed or ready to commit it.

In brackets, they may properly make use of undercover operations in which they assume false names, false appearances. It really doesn't apply, false names or appearances here.

They may properly assume the roles of members of criminal organization. They may properly offer a gift to the [d]efendant, the money which is involved in the commission of the crime itself. And they may properly instigate the offer of money to the [d]efendant.

Based on the proof that I have heard, I don't find that there is an inducement. In this case, Mr. Smith was a confidential informant who worked at the direction of Detective Flanagan and others with the Murfreesboro Police Department on multiple individuals. The testimony from Mr. Smith was that he would call and -- or . . . Defendant . . . would tell him where to meet him. That's what happened in the videos that we saw. And that none on the inclusions, that was there was no persuasion, there is no fraudulent representation, no threats, no coercive tactics, harassment, promises of reward or pleas based on need, sympathy, or friendship I find.

Now, on the off chance that the Court of Criminal Appeals or Supreme Courts finds that, in fact, there was inducement, I will further address part two. And that is, such person was otherwise unwilling or had no predisposition. And I go back to the questioning again of Mr. Smith wherein he was asked, why did you choose [Defendant]. His answer was fairly simple. Because the witness knew him and knew that he could get it from him.

So, I find based on that testimony alone -- and then I think it follows up, the testimony was if he knew if [Defendant] trusted Mr. Smith. And the answer was he trusted him enough to sell to him.

- 14 -

So, I'm going to find -- even as to factor two, if there was some inducement that there was a predisposition to sell based on that testimony. And, therefore, I'm going to deny the request to charge entrapment in this case.

## 2. Standard of Review

A defendant has a constitutional right to a "correct and complete charge of the law." *State v. Hollis*, 342 S.W.3d 43, 50 (Tenn. Crim. App. 2011); *Cauthern v. State*, 145 S.W.3d 571, 600 (Tenn. Crim. App. 2004). Consequently, trial courts are required, without request, "to give 'a complete charge of the law applicable to the facts of the case.'" *Hollis*, 342 S.W.3d at 50 (quoting *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998)). "A trial court's refusal to grant a special instruction is error only when the general charge does not fully and fairly state the applicable law." *State v. Hawkins*, 406 S.W.3d 121, 129 (Tenn. 2013) (citations omitted).

"Questions regarding the propriety of jury instructions are mixed questions of law and fact; thus, our standard of review is de novo with no presumption of correctness." *State v. Perrier*, 536 S.W.3d 388, 403 (Tenn. 2017). We review "the charge as a whole in determining whether prejudicial error has been committed." *Hollis*, 342 S.W.3d at 50 (quoting *In re Estate of Elam*, 738 S.W.2d 169, 174 (Tenn. 1987)). "A charge is prejudicially erroneous "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *Id.* (first quoting *State v. Vann*, 976 S.W.2d 93, 101; and then quoting *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997)). An error or misstatement in jury instructions is subject to constitutional harmless error analysis. *State v. Faulkner*, 154 S.W.3d 48, 60 (Tenn. 2005).

## 3. Entrapment

Tennessee Code Annotated section 39–11–505 provides:

It is a defense to prosecution that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so. If a defendant intends to rely on the defense of entrapment, the defendant shall give to the district attorney general a notice comparable to that required for an insanity defense under Rule 12.2 of the Tennessee Rules of Criminal Procedure.

The trial court makes the initial determination of whether entrapment has been "fairly raised" by "consider[ing] the evidence in the light most favorable to the defendant,

- 15 -

including all reasonable inferences flowing from that evidence." *State v. Blackmon*, 78 S.W.3d 322, 331 (Tenn. Crim. App. 2001) (citing *State v. Bult*, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998)). If entrapment has been fairly raised by the evidence, the trial court must give the instruction, and "the issue of predisposition becomes a question of fact for the jury." *Blackmon*, 78 S.W.3d at 331 (citing *Sherman v. United States,* 356 U.S. 369, 377 (1958)).

As stated above, no pretrial notice for an entrapment instruction appears in the record. To any extent such a notice was filed, we agree with the State that the evidence produced at trial was insufficient for the trial court to instruct the jury on the entrapment defense. We agree with the State's assessment that "[t]he trial court here correctly deduced that the proof offered during trial did not raise the defense of entrapment because there was no evidence of inducement." Inducement by law enforcement officials may include "persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship." *State v. Jones*, 598 S.W.2d 209, 225 (Tenn. 1980) (appendix), *superseded by statute*, Criminal Sentencing Reform Act of 1989, Pub. Acts, c. 591, § 1 (codified as amended at Tenn. Code Ann. § 39-11-505), *as recognized in State v. Shuck*, 953 S.W.2d 662, 666 (Tenn. 1997). In *Jones*, our supreme court also stated, "A solicitation, request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement." *Id.*

Here, Mr. Smith purchased drugs from Defendant as part of Mr. Smith's role as a CI, but the Murfreesboro Police did not instruct the CI to target Defendant or lure him into a school zone. As the State's brief observes, the CI testified that he knew Defendant as a person from whom he could purchase drugs and that Defendant trusted CI enough to sell him drugs. The interactions between the CI and Defendant captured on video support the State's assertion that the CI and Defendant "enjoyed a cordial relationship in addition to a business relationship," rather than one resulting from pressure or inducement. Furthermore, the relationship of cordiality and trust between the CI and Defendant supports the trial court's conclusion that an entrapment defense instruction was not warranted because Defendant was predisposed to sell drugs. *See, e.g.*, *id.* ("where a person is predisposed to commit an offense, that is, ready and willing to violate the law, the fact that government officials or their agents merely afford opportunities for him to do so does not constitute entrapment.").

In sum, the entrapment defense was not fairly raised by the evidence, and therefore the trial court did not err in declining Defendant's request for the instruction. He is not entitled to relief on this issue.

## C. Sentencing

Defendant contends the trial court imposed excessive sentences by (1) failing to consider and apply mitigating factors; (2) imposing consecutive sentences; and (3) denying Defendant's request for probation.

### 1. Standard of Review

"[S]entences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

Trial courts are "required under the 2005 amendments [to the Sentencing Act] to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Id.* at 698-99 (quoting Tenn. Code Ann. § 40-35-210(e)). The 2005 amendments to the Sentencing Act "abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only." *State v. Anderson*, No. W2022-00669-CCA-R3-CD, 2023 WL 3019008, at *8 (Tenn. Crim. App. Apr. 20, 2023) (citing Tenn. Code Ann. §§ 40-35-114, -210(c)); *see* Tenn. Code Ann. § 40-35-114; *see also Bise*, 380 S.W.3d at 701; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343 (quoting Tenn. Code Ann. § 40-35-210(d)).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and 114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made on the defendant's own behalf about sentencing; and (8) results of the validated risk and needs assessment conducted by the Department of Correction and contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also

consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (5).

### 2. Sentencing on School Zone Offenses

Before addressing Defendant's stated issues, we review the trial court's sentencing on Counts 1 and 2, the offenses which the jury, through its verdicts, found occurred within a school zone.

As relevant to this case, at the time of Defendant's offenses, the law provided that a defendant convicted of selling drugs, including cocaine, within 1,000 feet of the real property of a public or private secondary school or preschool "*shall* be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation." Tenn. Code Ann. § 39-17-432(b)(1) (emphasis added) (amended Sept. 1, 2020). A defendant would also be eligible for enhanced fines under the section. *See id.* § 39-17-432(b)(2)(A)-(E). As relevant to this case, if the person committed the offense within 1,000 feet of a preschool, the offender would "not be subject to additional incarceration as a result of this subsection (b)" but would be subject only to "the additional fines imposed by this section." *Id.* § 39-17-432(b)(3).

The statute in effect at the time of the offenses also contained the following provisions:

> (c) Notwithstanding any other law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) *shall be required to serve at least the minimum sentence* for the defendant's appropriate range of sentence. Any sentence reduction credits the defendant may be eligible for or earn shall not operate to permit or allow the release of the defendant prior to full service of the minimum sentence.
>
> (d) Notwithstanding the sentence imposed by the court, title 40, chapter 35, part 5, relative to release eligibility status and parole, *shall not apply to or authorize the release of a defendant sentenced for a violation of subsection (b) prior to service of the entire minimum sentence* for the defendant's appropriate range of sentence.

*Id.* § 39-17-432(c)-(d) (emphasis added) (amended Sept. 1, 2020).

Thus, under the Drug-Free Zone Act as it existed at the time of the offenses, Defendant's conviction for selling cocaine within 1,000 feet of Holloway High School

- 18 -

would have been sentenced as a Class A felony, rather than a Class B felony (as sale of 0.5 grams or more of cocaine was, and still is, classified absent the school zone enhancement), and would have been eligible for elevated fines. Defendant's conviction for the sale of cocaine within 1,000 feet of the Murfreesboro Head Start facility would not have been eligible for an enhanced sentencing classification, as it occurred within 1,000 feet of a preschool. Instead, it would have been eligible for an enhanced fine only. However, per subsections (d) and (e), Defendant would have been required to serve at least eight years on his conviction in Count 1, the minimum Range I sentence for a Class B felony, and fifteen years on Count 2, the minimum Range I sentence for a Class A felony, *see* Tenn. Code Ann. § 40-35-112(a)(1)-(2), and he would not have been eligible for release before service of those mandatory minimum sentences.

On September 1, 2020, an amended version of section 39-17-432 went into effect. Under the revised statute, the school zone radius was reduced from 1,000 feet to 500 feet. Additionally, the trial court was no longer required to sentence an offense occurring within a school zone at a higher classification; rather, the amended statute provided that "A violation of § 39-17-417 . . . *may be* punished one classification higher than is provided in § 39-17-417(b)-(i)" if the offense occurred within a school zone. *Id.* § 39-17-432(b)(1) (eff. Sept. 1, 2020). Furthermore, the provision requiring service of the minimum sentence within the range was eliminated:

> (c)(1) Notwithstanding any other law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) *may be required* to serve at least the minimum sentence for the defendant's appropriate range of sentence.
>
> (2) There is a rebuttable presumption that a defendant *is not required* to serve at least the minimum sentence for the defendant's appropriate range of sentence. The rebuttable presumption is overcome if the court finds that the defendant's conduct exposed vulnerable persons to the distractions and dangers that are incident to the occurrence of illegal drug activity.
>
> (3) *If the defendant is required to serve at least the minimum* sentence for the defendant's appropriate range of sentence, any sentence reduction credits the defendant may be eligible for or earn must not operate to permit or allow the release of the defendant prior to full service of the minimum sentence.

*Id.* § 39-17-432(c)(1)-(3) (emphasis added).

Generally, "a criminal offender must be sentenced pursuant to the statute in effect at the time of the offense." *State v. Keese*, 591 S.W.3d 75, 82 (Tenn. 2019) (quoting *State*

*v. Smith*, 893 S.W.2d 908, 919 (Tenn. 1994)). However, our criminal code contains a Criminal Savings Statute, which provides,

> When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense. Except as provided under § 40-35-117, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act.

Tenn. Code Ann. § 39-11-112.

This court has concluded that persons who were convicted for offenses occurring before September 1, 2020, are not subject to sentencing under the revised version of the Drug-Free Zone Act. *See State v. McKenzie*, No. E2012-00445-CCA-R3-CD, 2022 WL 2256338, at *10 (Tenn. Crim. App. June 23, 2022), *perm. app. denied* (Tenn. Nov. 16, 2022). However, the sentencing hearing in this case took place December 9, 2021, before this court issued its opinion in *McKenzie*. Thus, as the parties and trial court recognized, the applicability of the Savings Statute to Defendant's case was an unresolved question at the time of Defendant's sentencing hearing.

At the sentencing hearing, defense counsel appeared to concede that the savings statute would not reduce the Drug-Free Zone Act radius from 1,000 feet to 500 feet in his case. Additionally, although the revised Drug-Free Zone Act gives the trial court the discretion whether to elevate a drug offense occurring within a K-12 school zone by one offense grade, defense counsel appeared to concede that the trial court was required to sentence his conviction for Count 2, sale of 0.5 grams or more of cocaine within 1,000 of Holloway High School, as a Class A felony rather than a Class B felony. Defense counsel argued, however, that he was entitled to what he deemed the more favorable sentencing scheme of the post-2020 Drug-Free Zone Act, and the trial court should not sentence Counts 1 and 2 under the sentencing provisions requiring service of one hundred percent of the minimum sentence before release. Instead, Defense counsel urged the trial court to sentence Defendant as a Range I, standard offender on both counts, applying the standard thirty percent release eligibility.

The State argued that if the newer provisions of the Drug-Free Zone Act applied, the court would "not have discretion under Count 1 for the drug-free school zone for the 100 percent;" the State argued that under the new act the trial court *would* have discretion not to impose 100% of the minimum sentence on Count 2 (the offense occurring within 1,000 feet of Holloway High School), and the State argued the court should use its

discretion to impose 100 percent of the sentence, and to sentence him for an A felony for that offense.

After discussing the application of enhancement factors, consecutive sentencing, and the sentencing range, the trial court made the following findings of fact and conclusions of law regarding the Drug-Free Zone Act and the Savings Statute:

> I will next consider whether or not the Saving Statute applies.
>
> Based upon *Menke*[4], as well as 39-11-112, although, contrary to what the statute says, I do believe it's reasonable to find that the Savings Statute does apply in this case based on . . . that reasoning in Menke. And that is: The statute changed in 2020.
>
> And that, as far as Count 1, that he should get the benefit of the -- not at 100 percent.
>
> But as far as . . . Count 2, in reading the statute, I find that there is a rebuttable presumption. However, that's overcome.
>
> The statute doesn't say "only."
>
> However, it does say, overcome if the [c]ourt finds the [d]efendant's conduct exposed vulnerable persons to the distraction and dangers that are incident to the occurrence of the illegal drug activity.
>
> It is unclear if that statute requires proof that there were children or teachers or others on the scene.
>
> And so out of an abundance of caution, I am going to decline to apply 100 percent sentence as to Count 2. However, it is an A Felony.

Had the trial court had the benefit of this court's *McKenzie* opinion, the trial court would have been aware that it was required to sentence Defendant under the Drug-Free Zone Act as it existed at the time of Defendant's offenses. However, without such guidance, the trial court imposed sentences that were, ultimately, erroneous in part. The court was required to sentence Defendant's conviction in Count 2 as a Class A felony, and

---

[4] *State v. Menke*, 590 S.W.3d 455 (Tenn. 2019). In *Menke*, the Tennessee Supreme Court concluded that the Savings Statute entitled appellant to "lesser penalties" provided by statutory amendments which changed theft of property valued at $1,000 or more but less than $10,000 from a Class D felony (effective at time of the offense) to Class A misdemeanor (as enacted after offense but before sentencing). *Id.* at 470.

- 21 -

it did so. However, the court was required to order Defendant to serve no less than one hundred percent of the minimum Range I sentences for Counts 1 and 2. Thus, the court was required to order Defendant to serve no less than eight years for Count 1 and no less than fifteen years for Count 2. *See* Tenn. Code Ann. § 40-35-112(a)(1)-(2). Instead, the trial court imposed sentences with release eligibilities of thirty percent. We note that the "special conditions" box for the Count 1 judgment reads, in part, "Drug free school zone enhancement shall not apply in this count," and that box for count 2 contains the notation, "Mandatory minimum 100% sentence shall NOT be applied in this count."

Accordingly, we remand the case to the trial court for entry of revised judgments in Counts 1 and 2 reflecting that Defendant, while sentenced as a Range I offender, shall not be released before service of one hundred percent of the minimum sentence in the range for each offense (i.e., eight years in Count 1 and fifteen years in Count 2).[5]

Having addressed this multifaceted issue, we now turn to Defendant's stated issues regarding sentencing.

### 3. Individual Sentence Lengths

Defendant contends the trial court "abused its discretion by not considering and applying any mitigating factors at the sentencing hearing." The State responds that the trial court properly considered the principles of sentencing, and thus Defendant's sentences should be given deference and not disturbed on appeal. The State asserts the trial court properly considered the proposed mitigating factors and found that none applied.

As stated above, at the sentencing hearing Defendant argued the trial court should apply sentencing mitigating factors based on the offenses' failure to cause or threaten serious bodily injury, that Defendant was acting under strong provocation, the existence of substantial grounds to excuse or justify his conduct, and he was motivated by the desire to provide for his family. *See* Tenn. Code Ann. § 40-35-113(1)-(3) and (7). Defendant also argued the circumstances of the offenses required application of the "catch-all" provision of Code section 40-35-113(13). The trial court identified the principles of sentencing, set forth above, in imposing sentence. However, in addressing Defendant's proposed mitigating circumstances, the trial court stated only, "I have considered all of the mitigating factors. I do not find that any mitigating factor applies in this case." Conversely, in announcing it was enhancing

---

[5] Defendant is not without remedy in this regard. The most recent version of the Drug-Free Zone Act permits persons sentenced under the pre-2020 version of the Act to petition the trial court to be sentenced under the current version of the Act. *See* Tenn. Code Ann. § 39-17-432(h)(1) (eff. Apr. 29, 2022) ("Notwithstanding subsection (d) or (e) or any law to the contrary, the court that imposed a sentence for an offense committed under this section that occurred prior to September 1, 2020, may, upon motion of the defendant or the district attorney general or the court's own motion, resentence the defendant pursuant to subsections (a)-(g).")

Defendant's individual sentences based on his lengthy criminal history, *see* Tenn. Code Ann. § 40-35-114(1), the trial court made detailed on-the-record findings concerning Defendant's criminal history, setting forth the offenses for which he had been convicted and the number of times he had been convicted for each offense.

To be afforded deference on appeal, the trial court must "place on the record any reason for a particular sentence." *Bise*, 380 S.W.3d at 705. There is no presumption of reasonableness when the trial court fails to consider and weigh the applicable common law factors. *King*, 432 S.W.3d at 327-28; *Caudle*, 388 S.W.3d at 29. But as this court has observed:

> [T]rial courts need not comprehensively articulate their findings concerning sentencing, nor must their reasoning be "particularly lengthy or detailed." *Bise*, 380 S.W.3d at 706. Instead, the trial court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision[-]making authority." *Id.*

*State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *5 (Tenn. Crim. App. Apr. 12, 2023) (alterations in original), *no perm. app. filed*.

"When a trial court fails to consider and weigh the relevant factors, the presumption of reasonableness does not apply, and this court may either conduct a de novo review or remand the case for reconsideration." *State v. Fair*, No. W2023-00234-CCA-R3-CD, 2024 WL 792011, at *9 (Tenn. Crim. App. Feb. 27 2024) (citing *King*, 432 S.W.3d at 327-28). Still, the "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. In addition, the "weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345.

Here, Defendant proposed several mitigating factors for the trial court's consideration. In our view, "[t]he mitigation offered by [Defendant] and established in the record should have been considered and *addressed* by the trial court even if the trial court ultimately assigned little or no weight to it." *State v. Jackson*, No. W2021-00208-CCA-R3-CD, 2022 WL 370090, at *4 (Tenn. Crim. App. Feb. 8, 2022) (emphasis added). However, although the trial court did not address Defendant's specific mitigating factors, we note that on balance, the trial court properly considered the principles of sentencing, as particularly evidenced by the court's examination of Defendant's sentencing range and the consideration of the Drug-Free Zone Act's applicability to Defendant's sentences in Counts 1 and 2. We also note that the trial court did not impose the maximum sentence for any of

- 23 -

Defendant's convictions. Thus, we will afford the trial court's sentencing determination deference, and will review for an abuse of discretion. Our review of the record shows the trial court was aware of the mitigating circumstances but implicitly rejected them. Our review further leads this court to conclude that Defendant's assertions that he acted under provocation and that substantial grounds exist to justify his conduct are not supported by the record. Defendant sold cocaine to a confidential informant, so Defendant's actions did not cause or threaten harm, and we accredit Defendant's contention that he sold drugs to support his family. However, those two mitigating factors are far outweighed by Defendant's criminal history. He had ninety-two prior convictions. The trial court's rejection of the mitigating factors is supported by the reasons noted, but even if the mitigating factors were improperly denied, Defendant's sentence is consistent with the purposes and principles of sentencing. We, therefore, affirm the individual sentence lengths imposed by the trial court.

4. Consecutive Sentencing

Defendant argues the trial court erred in imposing consecutive sentences. Considering that most of his prior convictions were for misdemeanors, and in consideration of the mitigating factors announced above, Defendant argues that his forty-year sentence was excessive.

The abuse of discretion standard adopted in *Bise* also applies to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013); *see also* Tenn. R. Crim. P. 32(c)(1) (stating that the trial court, in ordering consecutive sentencing, "shall specify the reasons for this decision"). The trial court must find by a preponderance of the evidence that one of the statutory classifications for consecutive sentencing exists. *See* Tenn. Code Ann. § 40-35-115(b).

In imposing consecutive sentences, the trial court stated:

In considering consecutive sentences, I specifically find that . . . Defendant is an offender, whose record of criminal activity is extensive.

I would place it as "extremely extensive" dating back to when . . . Defendant was young.

He's now 48-years-old as he stands before the Court. And there's really not been a pause in his criminal activity since he turned 18.

I don't find that any of the other statutory consecutives apply.

I don't find that any of the mandatory consecutive sentencing applies.

However, I do find that an extended sentence in this case is necessary to protect the public against further criminal conduct by . . . Defendant. And that consecutive sentences relate -- reasonably relate to the severity of the offenses committed.

And that is: Three sales of cocaine. Two, of which, occurred within a school zone. One, of which, was a preschool. One was a secondary school.

There has been some discussion over whether school was in or out. But the statute doesn't make any exception to school being in or out.

The statute is there for a reason. And that is: As a society, we don't want folks selling cocaine or any other drug within a school zone.

And so we have three sales of cocaine.

So I do find that consecutive sentencing is appropriate in this case.

Although Defendant acknowledges he is eligible for consecutive sentencing per Tennessee Code Annotated section 40-35-115(b)(2), he urges this court to conclude the trial court nonetheless abused its discretion in imposing consecutive sentences. Defendant points to this court's opinion in *State v. Biggs*, 482 S.W.3d 923 (Tenn. Crim. App. 2015), in support of his position. In *Biggs*, a defendant pleaded guilty to four counts of aggravated robbery, two counts of theft by shoplifting, and one count of attempted aggravated robbery. *See id.* at 924-26. The trial court imposed partial consecutive sentences, resulting in a forty-four year sentence. *Id.* at 926. The trial court found that Biggs, whose criminal history began in the 1980s, "was an offender who had an extensive criminal history and that [he] was on probation when he committed these new offenses." *Id.* The prior convictions were for "evading arrest, forgery, speeding, and reckless driving, as well as multiple convictions for theft of property, casual exchange, and possession of marijuana and cocaine." *Id.* Also, Biggs was on misdemeanor probation at the time of the offenses for which he pleaded guilty. *Id.* On appeal, Biggs contended the trial court's imposition of partially consecutive sentences "result[ed] in a sentence length greater than that deserved for the offense committed." *Id.* This court concluded the trial court abused its discretion in imposing consecutive sentences:

Considering the circumstances of the offenses—that the robberies were committed with a toy gun, no one was injured, and two of the victims knew the gun was plastic—and also considering the Defendant's age of forty-nine and complete lack of previous violent offenses, we conclude that the trial court erred by imposing partial consecutive sentences. Although the trial court considered the applicable principles before sentencing the Defendant, we conclude that it violated those principles in two respects: (1) a sentence of forty-four years to be served at eighty-five percent is in effect a sentence of life imprisonment and is not "justly deserved in relation to the seriousness of the offense," *see* Tenn. Code Ann. § 40–35–102; and (2) a total effective sentence of forty-four years is not the "least severe measure necessary to achieve the purposes for which the sentence is imposed," *see* Tenn. Code Ann. § 40–35–103. It appears from the record that the Defendant was already serving a twelve-year sentence at the time of sentencing for these convictions. Imposition of a sentence that will confine the Defendant until age seventy will certainly protect the public from the Defendant and serve to appropriately punish him for his crimes.

*Id.* at 927-28.

In this case, Defendant compares his case to Biggs' because both Defendant and Biggs had mostly prior misdemeanor, and given the relatively small amount of cocaine sold to a confidential informant in the three buys, there was little risk of danger to the public. Defendant, at age forty-eight, was nearly the same age as Biggs at the time their respective sentences were imposed. However, unlike Biggs, Defendant had several prior felony convictions, including convictions for weapons possession and reckless endangerment with a deadly weapon. Defendant also had five prior convictions for domestic violence and four misdemeanor assault convictions. So unlike Biggs, Defendant's criminal history included offenses that were violent. We are mindful of the discretion afforded to a trial court that imposes a sentence that is consistent with the principles of sentencing. We see no basis to disturb the trial court's decision here, when sufficient evidence existed for the court to find one of the statutory consecutive sentencing factors by a preponderance of the evidence. Accordingly, we conclude that the trial court did not abuse its discretion by ordering Defendant to serve consecutive sentences, and he is not entitled to relief on this issue.

### 5. Probation

Finally, Defendant argues the trial court erred by denying his request for probation and ordering Defendant to serve his sentences in TDOC custody. We disagree.

- 26 -

A defendant shall be eligible for probation . . . if the sentence actually imposed upon the defendant is ten (10) years or less." Tenn. Code Ann. § 40-35-303(a). Under this state's advisory sentencing guidelines, a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, *should be considered* as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* § 40-35-102(6) (emphasis added). However, no defendant is presumed to be a favorable candidate for alternative sentencing. *See Carter*, 254 S.W.3d at 343 (citing Tenn. Code Ann. § 40-35-102(6)). Specifically, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant must prove his suitability of alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)).

In determining whether incarceration is an appropriate sentence, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C). The sentence imposed should be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(2), (4).

When addressing a defendant's suitability for probation, the trial court should consider such factors as "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017).

The trial court may deny probation solely on deterrence grounds "when the record contains evidence which would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *State v. Hooper*, 29 S.W.3d 1, 13 (Tenn. 2000). The trial court may also deny probation based solely on the seriousness of the offense, but in such instances "the circumstances of the offense as *particularly committed in the case under consideration* must demonstrate that the defendant committed the offense in some manner more

egregious than is contemplated simply by the elements of the offense." *Trent*, 533 S.W.3d at 292-93 (emphasis in original). Additionally, when denial of probation is based on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (citations omitted). However, if the denial of probation is not based solely on either deterrence or of the offense, the heightened standards of review announced in *Hooper* and *Totter* (and, presumably, *Trent*) do not apply. *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (citations omitted).

In concluding Defendant should serve his sentences in custody, the trial court stated:

> I have looked at the probation considerations. I have considered all of them. Some of them don't apply. Several of them really are against [Defendant]. And that is the facts and circumstances surrounding the offense.
>
> While not particularly horrifying; something we see every day. The fact is: He was selling cocaine. Two times, of which, near a preschool and/or high school.
>
> The prior criminal history of . . . Defendant is extremely excessive.
>
> The interest of society, I will find in being protected from possible future criminal conduct of . . . Defendant is great. And a sentence of probation I will find would unduly depreciate the seriousness of the offense. And confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses.
>
> I find that probation is not warranted in this case.

Our review of the record leads us to conclude the trial court did not abuse its discretion in denying Defendant probation. Initially, we note Defendant was sentenced to more than ten years in prison for his conviction on Count 2 (selling cocaine within 1,000 feet of Holloway High School); accordingly, that conviction was not eligible for probation. Defendant's convictions in Counts 1 and 3 were for B felonies, so although he was eligible for probation in those counts, he was not considered a favorable candidate for probation.

As stated above the totality of the trial court's findings as to all sentencing considerations showed it considered the principles of sentencing in making its sentencing decision. Such was also the case in the trial court's decision to deny probation. We agree with the trial court that the circumstances surrounding the two probation-eligible offenses

were not "particularly horrifying" or otherwise more egregious than contemplated by the elements of the offenses, but the trial court's other findings support its denial of probation. As stated throughout this opinion, Defendant had a lengthy criminal history, which supports a conclusion that "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct." Tenn. Code Ann. § 40-35-103(1)(A). Further, the trial court did not abuse its discretion in finding incarceration was required for a deterrent effect and to avoid depreciating the seriousness of Defendant's offenses. Finally, although not referenced by the trial court, the presentence report indicates Defendant was sentenced to probation in several of his prior convictions, but repeatedly violated his probation. These previous unsuccessful probationary sentences also support the trial court's denial of probation.

In sum, the trial court did not abuse its discretion in ordering Defendant to serve his sentences in custody. He is not entitled to relief on this issue.

## III. Conclusion

For the reasons stated above, we remand this case to the trial court for entry of revised judgments in Counts 1 and 2 that reflect that Defendant must serve one hundred percent of the minimum sentence in the range (eight years in Count 1 and fifteen years in Count 2) before he is eligible for release. In all other respects, the judgments of the trial court are affirmed.

_____
MATTHEW J. WILSON, JUDGE